UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE SANGUINETTI,

       Plaintiff,

v.                              Case No:  2:21-cv-529-JLB-KCD

COLLIER COUNTY, et al.,

       Defendants.

_____

## ORDER

Jorge Sanguinetti, a Peruvian national, was denied entry into the Cavo Lounge, a privately-owned and operated business, because his clothing ostensibly did not meet the Cavo Lounge's dress code.   He claims that reason was pretextual because he observed non-Hispanic individuals being granted entry into the Cavo Lounge in less suitable clothing than he was wearing.   When he questioned that decision and "politely" stated that he was denied entry because of his Hispanic heritage, he claims that various combinations of about a half-dozen Collier County Sheriff's Office ("CCSO") deputies beat him, falsely arrested him without probable cause, and/or jailed him without attending to his medical needs.   He then alleges that the Sheriff of Collier County and the deputies (collectively, "CCSO Defendants"), along with the owner and employees of the Cavo Lounge, orchestrated a scheme to falsify arrest reports and witness statements and withhold exculpatory information about the incident to state prosecutors, knowing that would cause him to be jailed awaiting his trial longer than he would have otherwise been

held.   In a complaint spanning 62 pages and more than 300 paragraphs—many of which are pleaded in the alternative and otherwise difficult for the Court to discern—he claims Defendants, both public employees and private individuals and in their individual and official capacities, violated an array of federal constitutional and Florida statutory protections.   After careful review, the Complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE** with leave to amend and correct the deficiencies set forth below.   Accordingly, Defendants' motions to dismiss (Docs. 7, 8, 51) are **GRANTED IN PART**.

## BACKGROUND

According to the face of the complaint, the following events are alleged to have occurred:

Defendant Stergios Tallides owns and operates the Cavo Lounge through Defendant SLR Naples Corp. in Naples, Florida.   (Doc. 1 at ¶¶ 14, 20.) Defendants Jason Buro and Joseph Marino are employed by the Cavo Lounge (collectively with Mr. Tallides, "Cavo Lounge Defendants").   (Id. at ¶ 21.)   The Cavo Lounge contracts with off-duty deputies of the CCSO for additional security "in exchange for monetary compensation or other benefits."   (See id. at ¶¶ 15, 18, 20–21, 62.)   Two of those deputies are Defendants Frank Scaduto and Adam Dillman.   (See id. at ¶ 18.)

Mr. Sanguinetti was awaiting entry to the Cavo Lounge at approximately 1:00 a.m. with a group of friends.   (Id. at ¶¶ 10, 22, 25.)   Mr. Buro and Mr. Marino observed Mr. Sanguinetti "act, speak and dress in a manner in which they perceived

to be Hispanic or Latino" and allegedly "uttered several derogatory comments" about Mr. Sanguinetti's race or national origin.   (Id. at ¶¶ 30–31.)   They then denied Mr. Sanguinetti and his friends entry to the Cavo Lounge, ostensibly because the group did not meet the Cavo Lounge's dress code.   (Id. at ¶ 26–28.) Having noticed that "white and non-foreign appearing" patrons dressed similarly to—or even less appropriately than—him and his friends had no problem gaining entry to the Cavo Lounge, Mr. Sanguinetti went to speak with Mr. Buro and Mr. Marino.   (Id. at ¶¶ 33–34.)

Mr. Buro and Mr. Marino allegedly conferred between themselves and agreed to have Mr. Sanguinetti "expelled" from the premises.   (Id. at ¶ 36.)   They summoned Deputies Dillman and Scaduto, who allegedly "were known to exhibit violent and aggressive tendencies toward patrons."   (Id. at ¶ 37.)   When they arrived, Mr. Sanguinetti alleges that they immediately began shouting and ordered him to the leave the premises.   (Id. at ¶ 38.)   Mr. Sanguinetti attempted to explain himself, but the Deputies would not listen.   Although he did not believe he committed any crime, Mr. Sanguinetti attempted to leave the area.   (Id. at ¶ 38– 40.)   As Mr. Sanguinetti turned around to do so, Deputies Dillman and Scaduto allegedly shoved and began striking him.   (Id. at ¶¶ 40–41.)   Shortly thereafter, Deputies David Drucks, Michael Puka, and David Crisp arrived on the scene and allegedly also joined in the use of force.   (Id. at ¶ 42.)   Eventually, Mr. Sanguinetti was handcuffed, arrested, and transported to the Collier County Jail.   (Id. at ¶¶ 44–45.)

Mr. Sanguinetti was arrested for felony battery on a law enforcement officer, resisting an officer with violence, and resisting an officer without violence.   (Id. at ¶ 3.)   But he claims he neither made unlawful contact with Defendants, nor did the Deputies ever see or hear about Mr. Sanguinetti violating any laws.   (Id. at ¶¶ 49–52.)   Even so, the Complaint alleges that the Deputies, along with Mr. Buro and Mr. Marino, "each submitted knowingly false sworn statements or testimony regarding" their "interaction [with] Mr. Sanguinetti" that directly contradicted video evidence of the altercation.   (Id. at ¶¶ 53–54.)   It also alleges that they suppressed "exculpatory evidence, so that Mr. Sanguinetti would be prosecuted for crimes they were fully aware he did not commit or even attempt to commit."   (Id. at ¶ 55.)

Mr. Sanguinetti contends that Sheriff Rambosk "was immediately apprised of the facts and circumstances surrounding Mr. Sanguinetti's arrest and detainment" and, after "personally evaluat[ing] the evidence against Mr. Sanguinetti, . . . personally directed his [Deputies] to levy all fault and blame" for the incident on Mr. Sanguinetti.   (Id. at ¶¶ 56–59.)   Moreover, the Complaint alleges that Sheriff Rambosk approved and ratified Mr. Sanguinetti's continued and allegedly unlawful imprisonment, and forwarded false evidence to prosecutors despite "being fully aware that [Deputies] Scaduto and Dillman were the true causes of the fiasco."   (Id. at ¶¶ 57–58.)

A Florida state criminal information was filed, allegedly "predicated on . . . false, misleading or incomplete information" which the CCSO Defendants provided

"because of their desire to incur favor and to continue their lucrative business relationships with" the Cavo Lounge Defendants.   (Id. at ¶¶ 80–82.)   The Complaint goes on to allege that "instead of notifying prosecutors or ordering Mr. Sanguinetti's immediate release from custody," Sheriff Rambosk "chose to knowingly approve false arrest reports and have them forwarded to prosecutors, so that Mr. Sanguinetti would remain unlawfully incarcerated" and criminally prosecuted.   (Id. at ¶ 63.)   A Florida state jury later acquitted Mr. Sanguinetti of all charges, and this lawsuit followed.   (Id. at ¶ 91.)

Broadly speaking, Mr. Sanguinetti alleges his constitutional and civil rights were violated under federal law (mostly under 42 U.S.C. § 1983), while also raising claims under Florida law.   (Doc. 1.)   He sues the CCSO Defendants and Cavo Lounge employees Marino and Buro, in their individual and official capacities, while also seeking to hold Sheriff Rambosk, the Cavo Lounge, Collier County, and Mr. Tallides vicariously liable for the actions of some or all.   (See id. at ¶¶ 11–21.) The CCSO Defendants, Collier County, and the Cavo Lounge Defendants filed separate motions to dismiss and, while certain arguments may be unique to a specific Defendant given the facts alleged, their reasons for dismissal largely overlap.   (Docs. 7, 8, 51.)

For example, all Defendants argue that Mr. Sanguinetti has filed a shotgun pleading by including multiple legal theories under the same count and indiscriminately referencing Defendants with little to no specificity thus preventing a meaningful analysis of his allegations.   They also raise multiple threshold issues

affecting multiple claims while contending that Mr. Sanguinetti has not sufficiently alleged plausible facts to maintain other claims.   Mr. Sanguinetti has been provided an opportunity to address Defendants' arguments but chose to only address some of them.   (See Docs. 30, 31, 54.)

The Court will first analyze whether Mr. Sanguinetti has filed a shotgun pleading before addressing the threshold issues common to multiple claims.   The Court will then turn to any remaining individual counts in sequential order.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."   Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999).   To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

## DISCUSSION

## I.   **Mr. Sanguinetti has filed a shotgun pleading**.

As noted, the Complaint is 62 pages long, consists of 315 paragraphs, and includes 20 claims—some with multiple legal theories.   (See Doc. 1.)   There are 108 paragraphs of factual allegations in that Complaint.   Rather than carefully

identifying which of those paragraphs support a particular count of the 20-count Complaint, Plaintiff reasserts <u>all 108 paragraphs for every claim</u> compounding confusion.   And given the lack of specificity with Mr. Sanguinetti's allegations, Defendants assert that "it is nearly impossible . . . to determine with any certainty which factual allegations give rise to which claims for relief."   (Doc. 7 at 9.)   Mr. Sanguinetti counters that, under the Federal Rules of Civil Procedure, he is entitled to assert claims in the alternative and under the same count.   (Doc. 30 at 8–9.) And he does not address why all 108 paragraphs are necessary to re-allege for all 20 counts.

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"   Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320 (11th Cir. 2015).   They can: (a) be replete with conclusory or vague facts not obviously connected to any particular cause of action; (b) fail to separate into a different count each cause of action or claim for relief where doing so would promote clarity; or (c) assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.   Id. at 1321–23.   Ultimately, a "dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is <u>virtually impossible</u> to know which allegations of fact are intended to support which claim(s) for relief."   Weiland, 792 F.3d at 1325 (quotation omitted, emphasis in original).[1]

---

[1] While Mr. Sanguinetti is correct that pleadings must be construed as to do

For example, as this Court noted in a strikingly similar complaint to the one here, Mr. Sanguinetti "improperly lumps multiple constitutional violations into [Count Nineteen] where he alleges a 1983 violation based on unofficial customs that caused Plaintiff to be deprived of his constitutional right to (1) engage in free speech; (2) be afforded equal protection of the law; and (3) be free from illegal or unreasonable searches and seizures, including the use of excessive force." Pinto v. Collier Cnty., No. 2:19-cv-551-FtM-60MRM, 2019 WL 5722172, at *2 (M.D. Fla. Nov. 5, 2019); (Doc. 1 at ¶ 281.)   He also incorporates all 108 factual paragraphs into each count, alleging at times simply that "Defendants" are liable for a specific claim despite his allegations focusing on the conduct of only certain individuals. (See, e.g., Doc. 1 at ¶¶ 151–62.)   This confusing comingling of claims and Defendants, compounded by the errors discussed below, makes it extraordinarily difficult for this Court and Defendants to parse the allegations in determining which of the twenty counts possibly states a claim to relief.   The Court is unable to decipher which counts refer to which Defendants here.   And if the Court cannot do it, it is unreasonable for Defendants to do it.

---

justice, the Court will not serve as de facto counsel, rewrite an otherwise deficient pleading, or sua sponte expand the legal parameters of this dispute.   GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998), overruled on other grounds, Iqbal, 556 U.S. 662.   Additionally, the Court notes that it has previous explained to Mr. Sanguinetti's counsel how to avoid a shotgun pleading yet counsel has repeated many of the same errors.   See Pinto v. Collier Cnty., No. 2:19-cv-551-FtM-60MRM, 2019 WL 5722172, 2020 WL 2219185, (M.D. Fla. Nov. 5, 2019, May 7, 2020).

Thus, any amended complaint should separate claims into separate counts to "promote clarity" while specifically identifying the individuals or entities liable. Fed. R. Civ. P. 10(b). Although the Court could dismiss this Complaint on this sole shotgun pleading ground, it will briefly note other deficiencies in the Complaint.

## II.   Threshold Issues

### A.   The official capacity claims against the CCSO Defendants.

The CCSO Defendants argue that Mr. Sanguinetti's official capacity claims against them are redundant.   (Doc. 7 at 9–10.)   Given that an official capacity claim is really a claim against the entity for which an individual works, and that the CCSO Defendants are all part of the same entity, the Court agrees and will dismiss the official capacity claims against the Deputies without prejudice. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Brown v. Neumann, 188 F.3d 1289, 1290 n.1 (11th Cir. 1999).

### B.   Individual claims against Sheriff Rambosk.

Next, Sheriff Rambosk argues that the individual capacity claims against him under section 1983 should be dismissed because "Plaintiff has not alleged that Sheriff Rambosk was physically present during the incident, that he had any involvement in [Mr. Sanguinetti's arrest], that he used any force on the Plaintiff, or had the ability to intervene to stop the use of force by others."   (Doc. 7 at 11.) Indeed, Mr. Sanguinetti must allege a causal connection between the Sheriff's actions and the alleged constitutional violation or that the Sheriff actually participated in the same.   Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).

Mr. Sanguinetti claims that Sheriff Rambosk personally evaluated the evidence, directed his Deputies to blame Mr. Sanguinetti for the events of that evening despite knowing the truth, kept him incarcerated, and provided falsified evidence in furtherance of Mr. Sanguinetti's criminal prosecution.   (Doc. 1 at ¶¶ 56, 57, 59, 63.)   These allegations, accepted as true at the motion to dismiss stage, suffice.   At the same time, Mr. Sanguinetti has not shown that Sheriff Rambosk had any involvement with any decision relating to Mr. Sanguinetti until <u>after</u> his arrest.   Thus, the excessive force and failure to intervene claims as to Sheriff Rambosk in his individual capacity will be dismissed without prejudice.

### C.    Claims against Collier County.

Collier County argues that "[s]ince the Sheriff and his deputies are independent of the County, the County should be dismissed with prejudice."   (Doc. 8 at 9.)   Indeed, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control."   Turquitt v. Jefferson Cnty., 137 F.3d 1285, 1292 (11th Cir. 1998).   Furthermore, section 1983 does not "impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."   Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 692 (1978).   Accordingly, if the alleged policy or practice of Sheriff Rambosk "cannot be said to speak for the county because the county has no say about that policy or practice," the County is not liable for the CCSO Defendants' actions.   Grech v. Clayton Cnty., 335 F.3d 1326, 1347 (11th Cir. 2003).   To be certain, the County's position is not without merit. <u>See, e.g.</u>, Troupe v. Sarasota Cnty., No. 8:02-CV-53-T-24MAP, 2004 WL 5572030, at

*13 (M.D. Fla. Jan. 22, 2004); Nix v. Cnty. of Sarasota, No. 8:16-cv-3435-T-17AAS, 2017 WL 1106098, at *2 (M.D. Fla. Mar. 21, 2017).

Yet the Eleventh Circuit has "not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." Brown v. Neumann, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999).   And whether an official capacity claim against a Florida sheriff is against the sheriff's office or the county where the sheriff serves continues to create problems for the courts.   C.P. ex rel. Perez v. Collier Cnty., 145 F. Supp. 3d 1085, 1097 (M.D. Fla. 2015); Hernandez v. Tregea, No. 2:07-cv-149-FtM-UASPC, 2008 WL 11430027, at *5 (M.D. Fla. Oct. 29, 2008).   In any event, the earliest precedent on this point suggests the latter view is correct.   Lucas v. O'Loughlin, 831 F.2d 232, 235 (11th Cir. 1987).

"In summary, although the law concerning municipal liability is not crystal clear, Lucas is still the controlling Eleventh Circuit case addressing the dismissal of a county defendant in a claim brought against a sheriff and a county pursuant to § 1983.   Under Lucas, the sheriff and his office are officials of the county." Hernandez, 2008 WL 11430027, at *6.   Thus, while the County may not be responsible for the Sheriff's policies and practices as alleged, it may nevertheless be the appropriate party for the official capacity claims against him.   Accordingly, the County's motion (Doc. 8) will be denied without prejudice to Collier County renewing the motion, if appropriate, with a discussion of the above concerns.

**D.    The Claims Against the Cavo Lounge and Mr. Tallides**.

Mr. Sanguinetti seeks to hold the Cavo Lounge and Mr. Tallides liable (with one exception discussed below) solely on the grounds that they "were the employers and/or supervisors" of the CCSO Defendants.   (See, e.g., Doc. 1 at ¶¶ 20, 125, 136, 190, 211, 235.)   The Court has already noted that Mr. Sanguinetti cannot maintain a section 1983 claim on this basis.   See Monell, 436 U.S. at 692.   And the same is true for his Florida state law claims because "[a]n employer is responsible for an intentional tort committed by an employee if the employee committed the tort while acting within the course and scope of his employment, **with the purpose of benefiting the interests of the employer**."   Ruiz v. Aerorep Grp. Corp., 941 So. 2d 505, 507 (Fla. 3d DCA 2006) (emphasis in original).

Simply put, Mr. Sanguinetti "has failed to allege or explain any benefit that the [Cavo Lounge or Mr. Tallides] received by [his] arrest, particularly since they were not" the ones who allegedly denied him entry and summoned the CCSO Defendants to have him removed based on his race or national origin; that ostensibly would be Mr. Marino and Buro.   Pinto, 2020 WL 2219185, at *5. Instead, Mr. Sanguinetti alleges that the Cavo Lounge and Mr. Tallides "would incur substantial benefits, namely that . . . [they] enjoy the protection of [the CCSO Defendants] and that any individual deemed to act in an unsatisfactory or offensive manner toward [them] will be subject to arrest, criminal prosecution and the use of force regardless of any violation of the law actually occurring."   (Doc. 1 at ¶ 86.) That very well may be, but under the facts here, Mr. Buro and Mr. Marino allegedly

conferred between themselves before summoning the CCSO Defendants after the two noticed Mr. Sanguinetti; nothing suggests this was for the benefit of anyone other than themselves.   (Id. at ¶¶ 26–37.)   Nor are there sufficient allegations that Defendants allegedly falsified evidence for the Cavo Lounge's benefit.   Thus, Mr. Sanguinetti fails to show that the Cavo Lounge or Mr. Tallides is vicariously liable for any of Defendants' actions and (for the reasons also noted below) the vicarious liability claims against the two are dismissed without prejudice.

### E.   Are private employees Mr. Buro and Mr. Marino state actors?

Mr. Sanguinetti alleges that Mr. Buro and Mr. Marino are liable for violating his constitutional rights under section 1983.   (See, e.g., Doc. 1 at ¶¶ 176, 252.)   Yet the two maintain that "these claims do not pertain to the actions of private citizens, such as" themselves.   (Doc. 51 at 12.)   Mr. Sanguinetti counters that he has pleaded facts showing the Cavo Lounge Defendants were the CCSO Defendants' employers and thus acted under the color of state law through joint action.   (Doc. 54 at 15–17.)

To state a section 1983 claim, a plaintiff must allege that the defendant deprived him of a constitutional right while acting under the color of state law. Willis v. Univ. Health Servs., Inc., 993 F.2d 837, 840 (11th Cir. 1993).   Mr. Sanguinetti correctly argues that "[p]rivate persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."   Dennis v. Sparks, 449 U.S. 24, 27–28 (1980).   Under this "joint-engagement" theory, "the plaintiff must plead in detail, through reference to

material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons." Harvey v. Harvey, 949 F.2d 1127, 1133 (11th Cir. 1992). "It is insufficient to 'merely string together' discrete events, without showing support for a reasoned inference that the private and state actors agreed to violate the plaintiff's rights." Higdon v. Tusan, 746 F. App'x 805, 813 (11th Cir. 2018) (quoting Harvey, 949 F.2d at 1133). Rather, the plaintiff "must show that the [defendants] 'reached an understanding' to violate [his] rights." Dykes v. Hosemann, 743 F.2d 1488, 1498 (11th Cir. 1984) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)).

The following allegations that the Court must accept as true are noteworthy. Mr. Sanguinetti alleges the CCSO Defendants "sought the favor of" the Cavo Lounge Defendants "because they provide . . . additional compensation or benefits." (Doc. 1 at ¶ 83.) He further alleges that the CCSO Defendants "were extremely disincentivized from taking any action against, or not explicitly or tacitly approved by," Mr. Buro and Mr. Marino. (Id. at ¶ 84.) The two summoned Deputies Dillman and Scaduto, who were allegedly "known to exhibit violent and aggressive tendencies toward patrons," with the goal of expelling Mr. Sanguinetti and his friends "from the premises." (Id. at ¶¶ 36–38.) Mr. Sanguinetti claims he was "beaten to a bloody pulp" and transported to the Collier County Jail. (Id. at ¶¶ 40– 45.) And he asserts that his incarceration was extended because all Defendants allegedly fabricated and suppressed evidence regarding the true events of that night. (Id. at ¶¶ 49–55, 57.) At the pleading stage, these allegations sufficiently

show that Mr. Buro and Marino were acting under the color of law.   See, e.g., Sims v. Jefferson Downs Racing Ass'n, Inc., 778 F.2d 1068, 1079 (5th Cir. 1985); Smith v. Brookshire Brothers, Inc., 519 F.2d 93, 94 (5th Cir. 1975).

### III.   Individual Claims

As a preliminary matter, Local Rule 3.01 contemplates that litigants will support their positions with legal authority and that a motion may be treated as unopposed based on a failure to respond.   Perhaps anticipating this, Mr. Sanguinetti states that "[t]o the extent that Plaintiff has failed to specifically address any argument by defendants, Plaintiff hereby opposes any request to dismiss a claim by virtue of his reliance upon the well-pleaded claims set forth within the complaint."   (Doc. 30 at 17; Doc. 54 at 17.)   This is not a proper response to a motion to dismiss.

"Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."   N.L.R.B. v. McClain of Georgia, Inc., 138 F.3d 1418, 1422 (11th Cir. 1998).   "The Court will not serve as counsel's law clerk and make the arguments that should have been developed by each side."   Barmapov-Segev v. City of Miami, No. 19-23742-CIV, 2019 WL 6170332, at *5 (S.D. Fla. Nov. 20, 2019).   Put differently, "[a] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed.   Also, [w]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."   Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (quotations omitted)).

Thus, any perfunctory assertion (of which there are many), failure to address legal arguments, and glossing over the Complaint's allegations is not well taken.   Since the Court is granting Mr. Sanguinetti leave to amend, he should take care to address every future point raised in opposition if he wishes not to abandon his claims.

### A.      Count I: First Amendment Retaliation

As best the Court can discern, Mr. Sanguinetti alleges that Mr. Buro and Marino, along with Deputies Scaduto and Dillman, violated his "First Amendment right to speak, dress and act in a manner of his choosing."   (Doc. 1 at ¶¶ 109–116.) Defendants counter that "nowhere . . .does Plaintiff allege . . . what constitutionally protected speech or acts were actually violated."   (Doc. 51 at 7.)   Confusingly, and without authority, Mr. Sanguinetti responds that he was "unlawfully retaliated against . . . for exercising his First Amendment rights to enter an establishment open to the public and to question the basis for any denial of said right."   (Doc. 54 at 12 (emphasis added).)

This is not what he claims in Count I.   Nor do Mr. Sanguinetti's vague and conclusory allegations that he was acting and dressed in a manner that others "perceived to be Hispanic or Latino" plausibly show that he was engaged in expressive conduct.   See generally Burns v. Town of Palm Beach, 999 F.3d 1317, 1336–37 (11th Cir. 2021) (noting that the First Amendment protects conduct intended to convey a particularized message with a likelihood that the message

would be understood by those who viewed it).   Thus, Count I is dismissed without prejudice.

**B.     Counts Two through Five: False Arrest and Imprisonment**.

Mr. Sanguinetti next alleges that all Defendants under Florida law, and the individual Defendants under section 1983, are liable for false arrest and imprisonment.   (Doc. 1 at ¶¶ 117–50.)   Mr. Buro and Mr. Marino argue that Mr. Sanguinetti has not shown they personally participated in or instigated Mr. Sanguinetti's arrest or imprisonment.   (Doc. 51 at 9–10.)

"False arrest and false imprisonment are closely related, but false imprisonment is a broader common law tort; false arrest is only one of several methods of committing false imprisonment."   Mathis v. Coats, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010).   A private individual may be liable if he encourages or procures the wrongful arrest of another through some persuasion or influence on law enforcement beyond the mere reporting of a crime.   See Harder v. Edwards, 174 So. 3d 524, 530–31 (Fla. 4th DCA 2015); Pokorny v. First Fed. Sav. & Loan Ass'n of Largo, 382 So. 2d 678, 682 (Fla. 1980).

Mr. Sanguinetti alleges that Mr. Buro and Mr. Marino "conferred and agreed with each other to have Plaintiff and his friends expelled from the premises" and "placed their plan into action by requesting assistance from [Deputies] Dillman and Scaduto, who were known to exhibit violent and aggressive tendencies toward patrons."   (Doc. 1 at ¶¶ 36–37.)   He also alleges that Mr. Buro and Mr. Marino "submitted knowingly false sworn statements or testimony regarding" the events of

that night, resulting in a criminal prosecution and prolonged incarceration.   (Id. at ¶¶ 3, 53.)   Accepting these allegations as true, the Court can reasonably infer that Mr. Buro and Marino instigated Mr. Sanguinetti's arrest and imprisonment by influencing or persuading the CCSO Defendants.

### C.    Counts Six and Seven: Assault and Battery

Mr. Sanguinetti alleges all Defendants are liable for assault and battery under Florida law.   (Doc. 1 at ¶¶ 151–74.)   Mr. Buro and Mr. Marino respond that, among other things, Mr. Sanguinetti has not established the requisite elements of these torts.   (Doc. 51 at 11.)   Rather than address this argument, Mr. Sanguinetti merely states that these claims, along with the "remaining causes of action brought under state law, should not be dismissed for the same reasons as set forth within the preceding section" of his response.   (Doc. 54 at 12.)   Yet his previous arguments did not address the elements of assault or battery and the Court will not do so for him.   At the same time, Mr. Buro and Mr. Marino merely cite case law without applying it to Mr. Sanguinetti's allegations.   Thus, Counts Six and Seven are dismissed without prejudice, but the Court expresses no opinion on the merits of the claims.

### D.    Count Eight: Excessive Force

Count Eight alleges a section 1983 violation against all individual Defendants based on the CCSO Defendants' actions while arresting Mr. Sanguinetti.   (Doc. 1 at ¶¶ 175–80.)   The Fourth Amendment encompasses a plaintiff's right to be free from the use of excessive force (i.e., an objectively

unreasonable amount of force) during an arrest.   Brown v. City of Huntsville, Ala., 608 F.3d 724, 737–38 (11th Cir. 2010).   As explained, Mr. Sanguinetti has alleged that Mr. Buro and Mr. Marino were state actors through joint participation with the CCSO Defendants.   (See Doc. 51 at 12.)   And while "§ 1983 addresses only constitutional torts, § 1983 defendants are, as in common law tort suits, responsible for the natural and foreseeable consequences of their actions."   Jackson v. Sauls, 206 F.3d 1156, 1168 (11th Cir. 2000).   Thus, because the two allegedly instigated Mr. Sanguinetti's arrest, and were jointly engaged with the CCSO Defendants, their motion is denied as to this claim.

### E.   Counts Nine and Ten: Malicious Prosecution

Mr. Sanguinetti next claims that all Defendants are liable under Florida law for malicious prosecution, with the individual Defendants also liable under section 1983.   (Doc. 1 at ¶¶ 181–203.)   Mr. Marino and Mr. Buro contend that "Plaintiff has failed to allege sufficient factual grounds to establish the requisite elements" of this claim.   (Doc. 51 at 12.)   But again, they do not engage with the pleaded allegations in arriving at this conclusion, instead merely proffering two citations with no commentary.   But neither does Mr. Sanguinetti repel these assertions in his response.   (See Doc. 54 at 12, 16.)   Counts Nine and Ten are therefore dismissed without prejudice.

### F.   Counts Eleven and Twelve: Abuse of Process

Here, Mr. Sanguinetti claims that all Defendants impermissibly initiated a criminal prosecution against him.   (Doc. 1 at ¶¶ 204–12.)   Specifically, he alleges

that the CCSO Defendants did so to curry favor with the Cavo Lounge Defendants and the latter did so because of alleged prejudice against Mr. Sanguinetti's Peruvian citizenship.   (Id. at ¶ 208.)   But he nevertheless "consents to the . . . dismissal of [these claims] against" the Cavo Lounge Defendants.   (Doc. 54 at 6.)

As to the Florida law claim, the CCSO Defendants argue that there are "no allegations that any defendant acted after Plaintiff's prosecution was initiated for any purpose other than the result for which it was created."   (Doc. 7 at 13.)   And as to the section 1983 claim, they posit that neither the Supreme Court nor the Eleventh Circuit have recognized this cause of action.   (Id.)   Mr. Sanguinetti does not respond to either argument and these claims are therefore dismissed.

### G.    Count Thirteen: Deprivation of Rights and Equal Protection

In Count Thirteen, Mr. Sanguinetti alleges that all Defendants violated the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.07, 760.08.   (Doc. 1 at ¶¶ 221–37.)   Specifically, he claims that Defendants fabricated evidence, "verbally denigrated him, maliciously prosecuted him, and improperly used their authority as law enforcement" to harm Mr. Sanguinetti, "all because of their discriminatory proclivities towards" Hispanic or Latino males.   (Id. at ¶¶ 222–23.)   The CCSO Defendants seek dismissal because "there are no factual allegations that [they] took any actions because of Plaintiff's race or national origin."   (Doc. 7 at 14.)   Mr. Buro and Mr. Marino also point out that Mr. Sanguinetti has not alleged administrative exhaustion of any section 760.07 claim in compliance with the terms of section 760.11.   (Doc. 51 at 15.)

First, Mr. Sanguinetti argues he "was not required to exhaust his" FCRA claim under section 760.08.   (Doc. 54 at 14.)   He may want to reconsider his position.   "As a prerequisite to bringing a civil action based upon an alleged violation of the FCRA, the claimant is required to file a complaint with the" Florida Commission on Human Relations "within 365 days of the alleged violation." Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So. 2d 891, 894 (Fla. 2002); Johnson v. 27th Ave. Caraf, Inc., 9 F.4th 1300, 1306, 1308 (11th Cir. 2021). Second, Mr. Sanguinetti's argument in response to the CCSO Defendants' motion does not address their conduct; it focuses on that of Mr. Buro and Marino.   (Doc. 30 at 15–17.)   Mr. Sanguinetti alleges no facts that the CCSO Defendants took any action against him because of his race or national origin.   Nothing suggests that the CCSO Defendants were even aware of Mr. Sanguinetti's race or national origin. Rather, as pleaded, the Deputies allegedly "were the true causes of the fiasco by virtue of their immense incompetence, violently dangerous demeanors and complete ignorance of the laws"—not any claimed racial prejudice.   (Doc. 1 at ¶ 57.)   This count is dismissed without prejudice as well.[2]

## H.    Count Fourteen: Deprivation of Rights & Equal Protection

Alleging the same in Count Fourteen against the individual Defendants, this time under sections 1981 and 1983, Mr. Sanguinetti claims he was subjected to

---

[2] Mr. Sanguinetti alleges, in a wholly conclusory fashion, that Sheriff Rambosk had a policy or custom of falsely arresting individuals based on their race. (Doc. 1 at ¶ 95.)   But there are no facts demonstrating such a policy or custom that supports this threadbare recitation.

selective treatment based on his race or national origin in violation of his Fourteenth Amendment rights.   (Doc. 1 at ¶¶ 238–48.)   The CCSO Defendants reassert their argument for Count Thirteen.   (Doc. 7 at 15–16.)   Mr. Buro and Mr. Marino, however, maintain that "there are insufficient factual allegations that [they] took the alleged actions because of Plaintiff's race or national origin. . . . In addition, the Complaint does not identify other similarly situated individuals . . . who made physical contact with any of the" CCSO Defendants and were not arrested.   (Doc. 51 at 16.)   Based on the allegations, only the CCSO Defendants are entitled to dismissal on this count for the reasons stated above.

As to Mr. Buro and Mr. Marino, the Court strongly suspects that counsel indiscriminately and incorrectly copied the Court's language from its summary judgment order in Pinto.   2021 WL 3406253, at *18.   There, the plaintiff indeed had made contact with a sheriff's deputy.   Id. at *2.   Here, though, Mr. Sanguinetti alleges that "[a]s Plaintiff was turning around to leave the area, he was physically prevented from doing so" by the Deputies.   (Doc. 1 at ¶ 40 (emphasis added).)   And the Court must accept at this stage that "Mr. Sanguinetti never made unlawful contact with any" Defendants as Mr. Buro and Marino otherwise assert for some reason.   (Id. at ¶ 49.)   Further, Mr. Sanguinetti claims that "white and non-foreign appearing" individuals were granted access to the Cavo Lounge, "regardless of attire or any other perceived factor."   (Id. at ¶ 33.)   Because this is the appropriate class of similarly situated individuals, coupled with the allegations of their prejudice toward Mr. Sanguinetti, Mr. Buro and Mr. Marino's arguments

fail on that argument.   Should Mr. Sanguinetti choose to maintain this claim in any amended complaint, Mr. Buro and Mr. Marino may revisit their arguments.

## I.   Count Fifteen: Conspiracy to Interfere with Civil Rights

Mr. Sanguinetti, in Count Fifteen and under sections 1983 and 1985, alleges all "Defendants engaged in a conspiracy, against Plaintiff, to deprive Plaintiff of the equal protection of the laws, or of the privileges and immunities under the laws." (Doc. 1 at ¶¶ 249–55.)   Specifically, he claims that he was deprived of "his rights to engage in free speech, to be free from illegal searches and seizures, to not be deprived of his liberty without the due process of law, to be afforded a fair trial and to be equally protected under the laws."   (Id. at ¶ 252.)   Defendants assert that Mr. Sanguinetti's claim fails under the "intracorporate conspiracy doctrine."   (Doc. 7 at 18; Doc. 51 at 18.)   Again, Mr. Sanguinetti does not address this argument.

"Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation."   Dickerson v. Alachua Cnty. Comm'n, 200 F.3d 761, 767 (11th Cir. 2000).   "This doctrine stems from basic agency principles that attribute the acts of agents of a corporation to the corporation, so that all of their acts are considered to be those of a single legal actor."   Id. (quotation omitted).   Thus, Mr. Sanguinetti cannot maintain his conspiracy claim when he alleges that Defendants' conspiracy was the result of "their desire to incur favor and to continue their lucrative business relationships" for the Cavo Lounge.   (Doc. 1 at ¶¶ 82–86.)   This count is dismissed without prejudice.

### J.    Count Sixteen: Failure to Intervene

Mr. Sanguinetti, under section 1983, alleges that the individual CCSO Defendants violated his Fourth and Fourteenth Amendment rights by failing to intervene and prevent the alleged use of excessive force against him.    (Id. at ¶¶ 256–59.)   The CCSO Defendants concede that Mr. Sanguinetti may pursue this claim for an alleged violation of his Fourth Amendment rights, but not "the violation of other constitutional rights."    (Doc. 7 at 19.)    And because they are correct, Count Sixteen is dismissed to the extent it alleges Mr. Sanguinetti was harmed by anything other than the CCSO Defendants' failure to intervene during the alleged use of excessive force outside the Cavo Lounge.    Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999) (rejecting an officer's failure to intervene to stop another officer from fabricating evidence as a basis of section 1983 liability).

### K.    Counts Seventeen and Eighteen: Negligent Hiring, Retention, Training, and Supervision.

In these counts, Mr. Sanguinetti alleges that Collier County, Sheriff Rambosk, and the Cavo Lounge were negligent under Florida law in their hiring and retention of the CCSO Defendants and Mr. Buro, as well as negligent in training and supervising the CCSO Defendants.    (Doc. 1 at ¶¶ 260–79.)    The CCSO Defendants argue that the "Complaint lacks any factual allegations showing that Sheriff Rambosk knew or should have known that [the Deputies] . . . were unfit for the job at the time they were hired," that the Sheriff "failed to investigate [their] background," or "became aware or should have become aware" that the Deputies "were unfit for the job."    (Doc. 7 at 20.)    Nor has Mr. Sanguinetti shown, Sheriff

Rambosk goes on, that Sheriff Rambosk "had actual or constructive knowledge of any violations by a specific [Deputy]." (Id. at 21.) The Cavo Lounge also raises these points. (Doc. 51 at 18–21.) Mr. Sanguinetti does not even acknowledge these arguments in passing, let alone the claims at issue, and thus the claims are dismissed without prejudice.

### L.    Counts Nineteen and Twenty: Monell Liability

In his final claims, Mr. Sanguinetti alleges that the County and Sheriff Rambosk maintained policies, customs, or practices that resulted in the deprivation of his "Constitutional rights to engage in protected speech, to be afforded the equal protection of the laws and to be free from illegal or unreasonable searches and seizures." (Doc. 1 at ¶ 281.) Specifically, he claims that the County and Sheriff Rambosk were aware of the Deputies' alleged violent tendencies "due to prior lawsuits, psychological exams, civilian complaints, internal performance reviews, internal whistleblowers, or their own personal observations." (Id. at ¶ 283.) Thus, Mr. Sanguinetti concludes that the County and Sheriff Rambosk acted with deliberate indifference to the risk of constitutional violations and failed to remedy these widespread faults. (Id. at ¶¶ 284–97.) He raises similar allegations against the Cavo Lounge—the only difference being a theory of corporate, not municipal, liability. (Id. at ¶¶ 298–315.) The County and Sheriff Rambosk counter that the "Complaint does not contain . . . factual allegations" demonstrating that they knew further training or supervision was required in a particular area or a pattern of

similar violations that would suggest deliberate indifference.   (Doc. 7 at 25–26.)
And the Cavo Lounge reiterates this position.   (Doc. 51 at 21–22.)

Again, Mr. Sanguinetti does not even address Monell in his responses, let
alone Defendants' persuasive arguments.   Given the conclusory assertions, the
Court cannot infer such liability based on a generic, vague, and overbroad custom or
policy and these counts are due to be dismissed also.

## CONCLUSION

Accordingly, Defendants' motions to dismiss (Docs. 7, 8, 51) are **GRANTED
IN PART** to the extent that the Complaint (Doc. 1) is **DISMISSED WITHOUT
PREJUDICE**.   **On or before October 3, 2022**, Mr. Sanguinetti is **DIRECTED** to
file an amended complaint consistent with this Order.   Defendants may renew
their arguments as addressed in this Order.   The parties should take care to brief
the issues that the Court has identified.   Finally, Mr. Sanguinetti is hereby warned
that his failure to correct the noted insufficiencies in this Order will result in the
dismissal of his claim with prejudice and without further warning.

**ORDERED** at Fort Myers, Florida, on September 19, 2022.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE