UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE SANGUINETTI,

      Plaintiff,

v.                               Case No:  2:21-cv-529-JLB-KCD

KEVIN RAMBOSK, COLLIER
COUNTY, SLR NAPLES CORP.,
ADAM DILLMAN, JOHN
SCADUTO, DAVID DRUCKS,
MICHAEL PUKA, DAVID CRISP,
JR., STERGIOS TALLIDES,
JOESPH MARINO, and JASON
BURO,

      Defendants.

_____/

**<u>ORDER</u>**

In a second amended complaint (Doc. 72) (the "SAC") that spans 49 pages and more than 300 paragraphs, Mr. Sanguinetti claims Defendants—both public employees and private individuals, in their individual and official capacities— violated his rights under the United States Constitution and Florida common law. Defendants have moved for dismissal (Doc. 79; Doc. 81; Doc. 82), which Mr. Sanguinetti opposes (Doc. 87; Doc. 88; Doc. 89).  After careful review, Collier County's motion to dismiss (Doc. 79) is **DENIED without prejudice**, while the other motions (Doc. 81; Doc. 82) are **GRANTED in part** and **DENIED in part**.

# BACKGROUND[1]

Defendant Stergios Tallides owns and operates the Cavo Lounge through Defendant SLR Naples Corp. in Naples, Florida.  (Doc. 72 at ¶¶ 14, 20).  Defendants Jason Buro and Joseph Marino (with Mr. Tallides and the Cavo Lounge, the "Cavo Lounge Defendants") are Cavo Lounge employees.  (*Id.* at ¶ 22).  The Cavo Lounge hires CCSO deputies for additional security "in consideration for monetary compensation and/or other benefits."  (*Id.* at ¶¶ 15, 18–21).  Defendants John Scaduto and Adam Dillman are two such deputies.  (*Id.* at ¶ 18).

On July 15, 2017, at approximately 1:00 a.m., Mr. Sanguinetti, a thirty-one year old male Hispanic or Latino citizen of Peru who currently resides in Collier County, Florida, attempted to enter the Cavo Lounge with a group of friends.  (*Id.* at ¶¶ 10, 23, 26).  Mr. Buro and Mr. Marino observed Mr. Sanguinetti "act, speak and dress in a manner in which they perceived to be Hispanic or Latino from a foreign nation or country" and allegedly "uttered several derogatory comments" about Mr. Sanguinetti's race or national origin.  (*Id.* at ¶¶ 30–31).  They then denied Mr. Sanguinetti and his friends entry to the Cavo Lounge, ostensibly because the group did not meet the Cavo Lounge's dress code.  (*Id.* at ¶ 27).  Mr. Sanguinetti attempted to speak with Mr. Buro and Mr. Marino after noticing that "white and non-foreign appearing" patrons dressed similarly to—or even less appropriately

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).  Accordingly, this background section accepts as true the well-pleaded facts recited in the SAC.

2

than—him and his friends entered the Cavo Lounge without incident.  (*Id.* at ¶¶ 33–34).

Mr. Buro and Mr. Marino allegedly conferred and agreed to have Mr. Sanguinetti "expelled" from the premises.  (*Id.* at ¶ 36).  They summoned Deputies Dillman and Scaduto, who allegedly "were known to exhibit violent and aggressive tendencies toward patrons."  (*Id.* at ¶ 37).  When Deputies Dillman and Scaduto arrived, they immediately shouted at Mr. Sanguinetti and ordered him to leave the premises.  (*Id.* at ¶ 38).  Mr. Sanguinetti attempted to explain himself and leave the area, but the Deputies would not listen and would not let him leave.  (*Id.* at ¶¶ 39–40).  Deputies Dillman and Scaduto shoved and struck Mr. Sanguinetti, after which Deputies David Drucks, Michael Puka, and David Crisp (with Deputies Dillman and Scaduto, the "Deputy Defendants") arrived on the scene and together, they physically restrained and beat Mr. Sanguinetti with closed fists.  (*Id.* at ¶¶ 19, 40–42).  Deputy Scaduto then sprayed Mr. Sanguinetti with mace and incapacitated him with several shocks from a taser.  (*Id.* at ¶ 43).

Eventually, Mr. Sanguinetti was—allegedly without probable cause—transported to the Collier County Jail.  (*Id.* at ¶¶ 47–49, 70–72, 93).  Mr. Sanguinetti was arraigned for felony crimes, including battery on a law enforcement officer and resisting arrest with violence; bail was set at $16,000.  (*Id.* at ¶¶ 49–50, 70–72, 93).  But he claims that he did not make unlawful contact with Defendants or resist arrest, and that the Deputy Defendants did not observe or hear about Mr. Sanguinetti violating any laws.  (*Id.* at ¶¶ 52–55).

Even so, Mr. Sanguinetti alleges that the Deputy Defendants, along with Mr. Buro and Mr. Marino, "each submitted knowingly false sworn statements or testimony regarding [their] interaction [with] Mr. Sanguinetti" that directly contradicted video evidence of the altercation. (*Id.* at ¶¶ 56–57). He also alleges they suppressed "exculpatory evidence, so that Mr. Sanguinetti would be prosecuted for crimes they were fully aware he did not commit or even attempt to commit." (*Id.* at ¶ 58).

Mr. Sanguinetti contends that Sheriff Rambosk "was immediately apprised of the facts and circumstances surrounding Mr. Sanguinetti's arrest and detainment" and, after "personally evaluat[ing] the evidence against Mr. Sanguinetti," he "directed [the Deputy Defendants] to levy all fault and blame" for the incident on Mr. Sanguinetti. (*Id.* at ¶¶ 59–61). He alleges that Sheriff Rambosk approved and ratified Mr. Sanguinetti's continued and allegedly unlawful imprisonment, and he forwarded false evidence to prosecutors "despite being fully aware that [Deputies] Scaduto and Dillman were the true causes of the fiasco." (*Id.* at ¶¶ 60–62).

Mr. Sanguinetti claims that Sheriff Rambosk openly instituted, maintained, and supported a policy or custom within the CCSO that encourages its officers to work concurrently for private companies and citizens by providing security for nightclubs. (*Id.* at ¶¶ 63, 65). This policy allegedly explains why about ten uniformed deputies were on the scene at the Cavo Lounge for Mr. Sanguinetti's arrest. (*Id.* at ¶ 64). Mr. Sanguinetti states the Deputy Defendants were also

supervised, directed, and compensated by the Cavo Lounge Defendants while "ostensibly on [] duty and in uniform." (*Id.* at ¶¶ 20, 86–89).

Mr. Sanguinetti alleges that Sheriff Rambosk and the CCSO have a de facto policy and custom of tolerating the use of excessive force, and the CCSO has repeatedly been accused of abuse of discretion, false statements, excessive force, and failure to discipline officers. (*Id.* at ¶¶ 66–67).[2] Mr. Sanguinetti alleges that—under the CCSO's arrangement with Cavo Lounge to arrest and prosecute "any individual deemed to act in an unsatisfactory or offensive manner toward [the Cavo Longue Defendants]"—the CCSO Defendants falsely arrested, assaulted, and battered him, used excessive force against him, and maliciously prosecuted him. (*Id.* at ¶¶ 89–90). Mr. Sanguinetti alleges that the Deputy Defendants' actions "are representative of a pervasive policy, custom or pattern and practice within the CCSO," and that Sheriff Rambosk has tacitly authorized such policies and customs. (*Id.* at ¶¶ 98–99, 108).

On or about August 11, 2017, a Florida state criminal information was filed, allegedly "predicated on . . . false, misleading or incomplete information" which the CCSO Defendants provided "because of their desire to incur favor and to continue their lucrative business relationships with" the Cavo Lounge Defendants. (*Id.* at ¶¶ 83–85). Throughout, Mr. Sanguinetti maintained his innocence, and a Florida state

---

[2] Paragraph 67 includes five bullet points listing news articles or federal civil case numbers intended to provide specific support for these allegations. (Doc. 72 at 13).

jury acquitted Mr. Sanguinetti of all charges.  (*Id.* at ¶¶ 94–95).  This lawsuit
followed.

## LEGAL STANDARD

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all
factual allegations in a plaintiff's complaint as true and take them in the light most
favorable to the plaintiff.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1
(11th Cir. 1999).  But conclusory allegations are not presumed to be true.  *Ashcroft
v. Iqbal*, 556 U.S. 662, 681 (2009).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing
a complaint subject to a motion to dismiss.  *Randall v. Scott*, 610 F.3d 701, 707 n.2
(11th Cir. 2010).  A claim is plausible if the plaintiff alleges facts that "allow[ ] the
court to draw the reasonable inference that the defendant is liable for the
misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550
U.S. 544, 556 (2007)).  The plausibility standard requires that a plaintiff allege
sufficient facts "to raise a reasonable expectation that discovery will reveal
evidence" that supports the plaintiff's claim.  *Twombly*, 550 U.S. at 556.  Thus, "an
unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient.  *Iqbal*,
556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if
it tenders naked assertions devoid of further factual enhancement."  *Id.* (quoting
*Twombly*, 550 U.S. at 557) (internal modifications omitted).  And courts are not
"bound to accept as true a legal conclusion couched as a factual allegation."
*Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## DISCUSSION

Broadly speaking, the SAC alleges that Mr. Sanguinetti's constitutional and civil rights were violated under federal law, while also raising claims under Florida common law. (Doc. 72). He sues Sheriff Rambosk in his individual and official capacities (*id.* at ¶ 17), and he sues the Deputy Defendants, Mr. Buro, and Mr. Marino in their individual capacities (*id.* at ¶¶ 18, 19, 22). He sues Collier County (the "County") directly (*id.* at ¶ 11) and he seeks to hold Sheriff Rambosk, SLR Naples Corp., the County, and Mr. Tallides vicariously liable for the actions of others (*id.* at ¶¶ 11–22, 128, 139, 163, 171, 182–83 205, 223).

Defendants moved the Court to dismiss Mr. Sanguinetti's initial complaint (Doc. 7; Doc. 8; Doc. 51); the Court granted in part and dismissed the initial complaint without prejudice. (Doc. 67). In its order, the Court gave Defendants leave to renew their arguments and cautioned Mr. Sanguinetti that a failure to correct the insufficiencies noted in that order would "result in the dismissal of his claim with prejudice and without further warning." (*Id.* at 26).

In the motions now before the Court, Defendants seek dismissal of Mr. Sanguinetti's SAC. (Doc. 79; Doc. 81; Doc. 82). As before, while some arguments are unique to facts alleged against a specific individual or entity, there remains some overlap among other grounds for dismissal. The Court will first address general matters that apply to the SAC as a whole or to several specific counts. Next, the Court will address grounds for dismissing individual counts.

7

## I.   Threshold Issues

### A.  Shotgun Pleading

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  They can: (a) contain multiple counts where each count adopts the allegations of all preceding counts; (b) contain conclusory or vague facts not connected to any particular cause of action; (c) fail to separate into a different count each cause of action or claim for relief when doing so would promote clarity; or (d) assert multiple claims against multiple defendants without specifying which defendants are responsible for which acts or omissions, or against which defendant the claim is brought.  *Id.* at 1321–23.  Ultimately, a "dismissal under Rules 8(a)(2) and 10(b) is appropriate where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief."  *Id.* at 1325 (quotation omitted, emphasis in original).

Defendants devote significant effort to arguing the SAC (like the initial complaint) is a shotgun pleading.  Undoubtedly, the SAC is sprawling, bloated, and unwieldy.[3]  But it improves upon the initial complaint because it attributes specific acts to specific Defendants, separates distinct causes of action,[4] winnows the Defendants named in each count, and realleges only certain factual allegations in each count.  Because it is not "*virtually impossible* to know which allegations of fact

---

[3] To be fair, Defendants' motions to dismiss are neither clear nor thorough.

[4] Except for Count Twenty-One, which the Court discusses below.

are intended to support which claims for relief," the Court declines to dismiss the SAC wholesale on this basis.  *See Weiland*, 792 F.3d at 1325.

### B. Claims against Collier County

The SAC raises several counts against the County directly, and in several other counts it asserts claims against the County based on the conduct of Sheriff Rambosk and the Deputy Defendants.  The County asks the Court to dismiss the claims against it with prejudice because it has no power or influence over Sheriff Rambosk's law enforcement functions and thus, according to the County, it cannot be held legally responsible for Sheriff Rambosk's policies or actions, or those of his deputies.  (Doc. 79 at 3–13).

The Eleventh Circuit has "not been entirely consistent on whether the relevant entity in an official-capacity suit against a sheriff in Florida is the County or the Sheriff's Department (as a unit operating autonomously from the County)." *Brown v. Neumann*, 188 F.3d 1289, 1290 n.2 (11th Cir. 1999).  And whether an official-capacity claim against a Florida sheriff is against the sheriff's office or the county the sheriff serves continues to create problems for district courts.  *See C.P. ex rel. Perez v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1097 (M.D. Fla. 2015) ("Determining the entity a Florida sheriff represents in a section 1983 official capacity suit has proven problematic."); *Hernandez v. Tregea*, No. 2:07-cv-149-FtM-UASPC, 2008 WL 11430027, at *4 (M.D. Fla. Oct. 29, 2008) ("[D]istrict courts interpreting Florida's laws and governmental structure have lamented that . . . '[t]he law is screwed up' in the area of municipal liability.") (cleaned up) (quoting

*Lucas v. O'Loughlin*, 831 F.2d 232, 236 (11th Cir. 1987)). Given these murky waters, the Court denied the County's initial motion without prejudice and invited it to address these concerns in a renewed motion. (Doc. 67 at 11).

The County accepted the Court's invitation. In its renewed motion, the County argues that, under Florida law, sheriffs and counties do not have a principal/agent relationship, and Sheriff Rambosk is not an employee of Collier County subject to its Board of County Commissioners. (Doc. 79 at 6–7). The County argues it plays no role in the hiring or supervision of sheriff's deputies and cannot dictate how Sheriff Rambosk performs his job. (*Id.*)

At this juncture, the Court does not have the information necessary to either dismiss the County from this case or to affirmatively rule that the County is a proper defendant. Accordingly, the County's motion is denied without prejudice to the County renewing these arguments at the summary judgment stage.

Collier County requests that the Court certify the decision on this issue for interlocutory appeal. (Doc. 79 at 16–18). Under 28 U.S.C. § 1292(b), a district court may certify an order for interlocutory appeal if "such order involves a controlling question of law as to which there is substantial ground for difference of opinion ***and*** [if] an immediate appeal from the order may materially advance the ultimate termination of the litigation" (emphasis added). The party seeking leave to appeal must satisfy all three elements. *See* 28 U.S.C. § 1292(b); *In re Brown*, No. 3:18-cv-415-J-34, 2018 WL 3496790, at *2 (M.D. Fla. July 20, 2018) ("The party seeking to appeal an interlocutory order must satisfy all three elements or leave to appeal

must be denied.") (citation omitted).  "Most interlocutory orders do not meet this test."  *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1359 (11th Cir. 2008).  Indeed, section 1292(b) interlocutory review is a "rare exception."  *See McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004) ("[W]hether to grant permission for an interlocutory appeal lies in the discretion of the appellate court, which in exercising its discretion should keep in mind that the great bulk of its review must be conducted after final judgment, with § 1292(b) interlocutory review being a rare exception.").

Collier County failed to address the elements of section 1292(b).  Nevertheless, the Court has considered this issue and determines that Collier County could not meet the standard set forth by section 1292(b) because dismissal of Collier County would not "materially advance the ultimate termination of the litigation."  *See* 28 U.S.C. § 1292(b).  An interlocutory appeal would materially advance the ultimate termination of the litigation where it "would serve to avoid a trial or otherwise substantially shorten the litigation."  *McFarlin*, 381 F.3d at 1259.  Collier County is only a defendant in twelve of twenty-one counts (some of which are dismissed via this order).  Even within those twelve counts, Collier County is the sole defendant in two counts, Counts Thirteen and Fourteen.  Thus, resolving this issue would only remove two counts from the SAC.  Accordingly, resolution of this issue on an interlocutory basis would not serve to avoid a trial or otherwise shorten the litigation.  *See, e.g.*, *Collier HMA Physician Mgmt, LLC v. NCH Healthcare Sys., Inc.*, No. 2:18-cv-408-SPC-MRM, 2022 WL 1540396, at *4 (M.D.

Fla. May 16, 2022) (denying request for interlocutory appeal where claims must go to trial regardless of an appeal and where defendant offered "no reason why [plaintiff] should wait for its claims to be adjudicated while it pursues an interlocutory appeal"); *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, No 8:19-cv-1895-CE-CPT, 2021 WL 510273, at *3 (M.D. Fla. Feb. 11, 2021) (finding that an immediate appeal would not materially advance the termination of the litigation because the issue involved one count of nine and there were multiple plaintiffs and multiple defendants involved with many other claims). Because all three elements must be met for the Court to grant leave to appeal, the Court need not consider the other elements.

Accordingly, Collier County's request for the Court to certify the decision for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) is denied.

### C. Claims against the Cavo Lounge and Mr. Tallides

In several counts, Mr. Sanguinetti seeks to hold the Cavo Lounge and Mr. Tallides vicariously liable because they "were the employers and/or supervisors" of Mr. Buro, Mr. Marino, and the CCSO Defendants. (*See, e.g.*, Doc. 72 at ¶¶ 21, 128, 139, 163, 171, 183).

Section 1983 does not "impose liability vicariously on governing bodies[5] solely on the basis of the existence of an employer-employee relationship with a tortfeasor." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978). It is only when the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. This policy may not be "nebulous" or "removed from the constitutional violation." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–23 (1985). Rather, a policy "generally implies a course of action consciously chosen from among various alternatives." *Id.* at 823.

To impose *Monell* liability, it is improper either to infer a municipal entity's policy from a single incident or to infer that such a policy caused that single incident. *Id.* at 823–24. Broadly speaking, "[o]ne or two incidents of abuse is generally insufficient to indicate a pattern." *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016).

And under Florida law, "an employer cannot be held liable for the tortious or criminal acts of an employee, unless the acts were committed during the course of

---

[5] In *Buckner v. Toro*, the Eleventh Circuit affirmed the district court's conclusion that "the *Monell* policy or custom requirement applies in suits against private entities performing functions traditionally within the exclusive prerogative of the state." 116 F.3d 450, 453 (11th Cir. 1997). The function at issue in *Buckner* was the provision of medical care to inmates. *Id.* Mr. Tallides and the Cavo Lounge have not challenged whether the actions taken by Mr. Buro, Mr. Marino, and the Deputy Defendants fall within the scope of *Buckner*'s holding. As such, that issue is beyond the scope of this Order.

the employment and to further a purpose or interest, however excessive or misguided, of the employer." *Iglesia Cristiana La Casa Del Senor, Inc. v. L.M.*, 783 So. 2d 353, 356 (Fla. 3d DCA 2001) (citations omitted).  An employee's conduct is within the scope of his employment when it "(1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Goss v. Hum. Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012) (citation omitted).

The Cavo Lounge and Mr. Tallides contend the SAC lacks factual allegations about any particular, widespread policy or custom of the Cavo Lounge that caused Mr. Sanguinetti's alleged injuries and damages.[6]  (Doc. 82 at 17).  Instead, they argue, all allegations of problematic policies or customs relate to Sheriff Rambosk and the CCSO.  (*Id.*)  The Cavo Lounge opposes the SAC's efforts to hold it responsible for the Deputy Defendants' conduct "simply on the basis that [they] were working an off-duty detail" that the CCSO approved.  (*Id.*)  And they reject

---

[6] In their motion to dismiss, the Cavo Lounge and Mr. Tallides largely ignore the issue of vicarious liability.  They seek dismissal of all claims against them, but they address the vicarious liability issue *only* for Counts Seventeen and Eighteen.  (Doc. 82 at 17).  Consequently, the Court would be entirely justified in denying their motion with respect to all the other claims in which Mr. Sanguinetti seeks to hold the Cavo Lounge and Mr. Tallides vicariously liable.  But because the Court concludes that the SAC contains adequate factual allegations about the Cavo Lounge's policies and Mr. Buro, Mr. Marino, and the Deputy Defendants' motivations to serve the interests of the Cavo Lounge that the Court must take as true *for the sole purpose of deciding the pending motions to dismiss*, the Court rejects Cavo Lounge and Mr. Tallides's request for dismissal on both substantive and procedural grounds.

allegations that the Cavo Lounge "engaged in any particular widespread policy or custom" that "exhibited a deliberate indifference to citizens' constitutional rights and developed a culture of excessive force among its employees, including the [Deputy Defendants]." (*Id.*)

In its order on Defendants' motions to dismiss the initial complaint, the Court agreed. (Doc. 67 at 12–13). The Court found the initial complaint lacked factual allegations that Mr. Buro and Mr. Marino summoned the Deputy Defendants to the Cavo Lounge to benefit anyone other than themselves, or that they falsified evidence to benefit the Cavo Lounge. (*Id.*)

But the factual allegations in the SAC provide more detail than those of the initial complaint. As to Defendants' motivations, it alleges: (1) Mr. Buro, Mr. Marino, and the Deputy Defendants acted to benefit the Cavo Lounge, to curry the Cavo Lounge's favor, and to continue their arrangement with the Cavo Lounge (Doc. 72 at ¶¶ 36, 85, 100, 202, 211); (2) the Cavo Lounge benefited from "the protection of officers of the CCSO," and anyone the Cavo Lounge deemed to have acted offensively would "be subject to arrest, criminal prosecution and the use of force" (*id.* at ¶ 89); and (3) the Cavo Lounge paid CCSO deputies to take orders from, and substitute their own judgment for that of, the Cavo Lounge (*id.* at ¶ 90).

As to the Cavo Lounge's policies, the SAC alleges: (1) the Cavo Lounge had a "well-settled practice" of "deliberate indifference to citizens' constitutional rights," and it "developed a culture of excessive force among its employees," both of which caused Mr. Sanguinetti's injuries (*id.* at ¶¶ 262, 264); and (2) the Cavo Lounge's

practices and policies included militarizing its employees, emphasizing aggression and violence in employee encounters with citizens (including deployment of tasers), and initiating criminal prosecutions against their "citizen-victims" for "'obstruction of justice' type offenses" (*id.* at ¶ 264).

And regarding what the Cavo Lounge knew about the Deputy Defendants' propensities, the SAC alleges: (1) the Cavo Lounge knew about, but failed to act to correct, the Deputy Defendants' propensities to use excessive force and arrest individuals without probable cause (*id.* at ¶¶ 265, 267, 268); (2) the CCSO, Sheriff Rambosk, and certain of the Deputy Defendants have "been the repeated focus of news making stories on the abuse of police discretion, false statements, excessive force, and failure to discipline officers" (*id.* at ¶ 67); (3) the Cavo Lounge knew of the Deputy Defendants' "propensities to arrest individuals without probable cause and to apply excessive force during arrests," and it was aware or should have been aware of incidents like Mr. Sanguinetti's arrest and prosecution that resulted in media attention and lawsuits (*id.* at ¶¶ 267–68, 289); and (4) based on these prior incidents, the Cavo Lounge knew or should have known that further training or supervision was needed, but it made a deliberate choice not to provide that training or supervision (*id.* at ¶¶ 275–76).

These allegations, *again accepted as true at the motion to dismiss stage*, offer sufficient factual support to state claims for vicarious liability against the Cavo Lounge and Mr. Tallides, under both § 1983[7] and Florida law.

## II.    Individual Claims

### A.   Count One: First Amendment Retaliation under § 1983

Count One raises claims of retaliatory arrest, imprisonment, and prosecution in violation of the First Amendment against Sheriff Rambosk and the Deputy Defendants, who argue dismissal is appropriate because no factual allegations established a causal connection between Mr. Sanguinetti's speech and the disputed conduct.  (Doc. 81 at 17–19).

"To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions."  *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016) (citations omitted).  "[T]o establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action because of the protected speech."  *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011) (citation omitted).

---

[7] The Court notes that in its order dismissing the initial complaint, it concluded that Mr. Sanguinetti's factual allegations were sufficient at the motion to dismiss stage to find Mr. Buro and Mr. Marino were acting under the color of law under a "joint-engagement theory."  (Doc. 67 at 13–15).  Here, too, the SAC's factual allegations are sufficient to allow § 1983 claims against the Cavo Lounge and Mr. Tallides to survive a motion to dismiss.  And based on this conclusion, Counts Seventeen and Eighteen survive.

Count One states Mr. Sanguinetti was arrested, imprisoned, and prosecuted "because [he] disputed the accuracy of [the] charges against him." (Doc. 72 at ¶¶ 113, 115). But this claim is unsupported by the SAC's factual allegations, which attribute Defendants' conduct to their biases against Mr. Sanguinetti's race, ethnicity, or national origin. (*See, e.g.*, *id.* at ¶¶ 44–45, 98, 100, 102–07). The only factual allegation pertaining to Mr. Sanguinetti's communication with the Deputy Defendants states "[he] attempted to explain himself to [Deputies] Dillman and Scaduto to no avail, as they refused to listen or even allow [him] to do so." (*Id.* at ¶ 39).

Because the SAC contains no factual allegations causally connecting Mr. Sanguinetti's speech and his arrest, imprisonment, or prosecution, this claim fails. Count One is therefore dismissed with prejudice.

## B. Counts Two through Five: False Arrest and False Imprisonment under § 1983 and Florida Law

Counts Two through Five are brought against the Deputy Defendants, Mr. Buro, Mr. Marino, Mr. Tallides, and the Cavo Lounge in their individual capacities, and against the County and Sheriff Rambosk in his official capacity. (Doc. 72 at ¶¶ 120–53). Defendants' arguments for dismissal focus mainly on shotgun pleading concepts.[8] (Doc. 81 at 8–10; Doc. 82 at 9–10). The Court addressed and rejected that argument, and thus Counts Two through Five survive the motions to dismiss.

---

[8] Mr. Tallides and the Cavo Lounge also argue, "the Plaintiff is bringing these counts against Cavo and Tallides in their individual capacity, however, Cavo is a corporation (Doc. 72 at ¶ 14), and Tallides is the owner of Cavo (Doc. 72 at ¶ 20), but there are absolutely no allegations that he was present at the time of the encounter

### C. Counts Six and Seven: Battery under Florida Law and Excessive Force under § 1983

Counts Six and Seven are brought against the Deputy Defendants, Mr. Tallides, and the Cavo Lounge in their individual capacities, and against the County and Sheriff Rambosk in his official capacity. (Doc. 72 at ¶¶ 154–72). Defendants argue Counts Six and Seven should be dismissed mainly on shotgun pleading grounds. (Doc. 81 at 10–11; Doc. 82 at 11–12). The Court addressed and rejected that argument, and thus Counts Six and Seven also survive the motions to dismiss.

### D. Count Eight: Malicious Prosecution under Florida Law

In Count Eight, Mr. Sanguinetti raises a claim of malicious prosecution under Florida law against the Deputy Defendants, Mr. Tallides, and the Cavo Lounge in their individual capacities, and against the County and Sheriff Rambosk in his official capacity. (Doc. 72 at ¶¶ 173–86). Under Florida law, the elements of malicious prosecution are:

> (1) The commencement or continuance of an original criminal or civil judicial proceeding[;] (2) [i]ts legal causation by the present defendant against plaintiff who was defendant in the original proceeding[;] (3) [i]ts bona fide termination in favor of the present plaintiff[;] (4) [t]he absence of probable cause for such proceeding[;] (5) [t]he presence of malice; and (6) [d]amage conforming to legal standards resulting to plaintiff.

*Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217, 1218 (Fla. 1986) (citations omitted).

---

with Sanguinetti." (Doc. 82 at 9–10). And they make this and similar arguments for other counts. (*See id.* at 11–12, 16). In so doing, they ignore Mr. Sanguinetti's claims for vicarious liability, which the Court already addressed.

The CCSO Defendants move for dismissal of Count Eight against the County and Sheriff Rambosk in his official capacity because the government is immune from suit for malicious prosecution.  (Doc. 81 at 19).  Mr. Sanguinetti agrees.  (Doc. 87 at 18).  Accordingly, Count Eight is dismissed with prejudice as to Sheriff Rambosk, in his official capacity, and the County.

Mr. Buro and Mr. Marino move for dismissal of Count Eight because Mr. Sanguinetti failed to support his claim for malicious prosecution under Florida law with sufficient factual allegations.  (Doc. 82 at 13).  They fault the SAC for not offering factual support for the allegation that they knowingly and intentionally engaged in the suppression of exculpatory evidence and giving false statements. (*Id.*)

The SAC alleges Mr. Buro and Mr. Marino: (1) never observed Mr. Sanguinetti commit a crime or violate the law and were never informed by witnesses of any such crime or violation (Doc. 72 at ¶¶ 52–55); (2) submitted knowingly false sworn statements or testimony, which were directly contradicted by truthful accounts and video evidence (*id.* at ¶¶ 56–57, 71); (3) knowingly and intentionally suppressed exculpatory evidence, and submitted fabricated inculpatory evidence to prosecutors  (*id.* at ¶¶ 58, 69, 104); (4) were motivated to act because of Mr. Sanguinetti's race or national origin (*id.* at ¶¶ 101–05); and (5) used derogatory insults toward Mr. Sanguinetti and his family (*id.* at ¶¶ 30, 104).

These allegations, accepted as true at the motion to dismiss stage, offer sufficient factual support to state a claim of malicious prosecution under Florida

law.  Count Eight survives, except for claims against the County and Sheriff Rambosk in his official capacity.

### E.  Count Nine: Malicious Prosecution under § 1983

Count Nine raises a claim of malicious prosecution under § 1983 against Sheriff Rambosk, the Deputy Defendants, Mr. Buro, and Mr. Marino.  (Doc. 72 at ¶¶ 187–97).  "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the common law tort of malicious prosecution."[9]  *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003). Malicious prosecution "requires a seizure pursuant to legal process."  *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (citations and internal quotation marks omitted).  For a warrantless arrest, such a seizure would occur "following an arraignment, indictment, or probable-cause hearing."  *Id.*  "'[N]ormal conditions of pretrial release' do not 'constitute a continuing seizure barring some significant, ongoing deprivation of liberty, such as a restriction on the defendant's right to travel interstate.'"  *Brienza v. City of Peachtree City, Georgia*, No. 21-12290, 2022 WL 3841095, at *8 (11th Cir. Aug. 30, 2022) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1236 (11th Cir. 2004) *abrogated on other grounds by Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)).

---

[9] Under the common-law elements of malicious prosecution grounded in the Fourth Amendment, the plaintiff must prove (1) that the officers instituted or continued a criminal prosecution against him; (2) with malice and without probable cause; (3) that terminated in his favor and caused damage to him.  *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020).

The CCSO Defendants move for dismissal of Count Nine because they claim there are not sufficient allegations of a constitutional violation in relation to the prosecution because the SAC focuses on circumstances related to Mr. Sanguinetti's warrantless arrest, which occurred before the legal process began.[10]  (Doc. 81 at 20–21).  But the SAC alleges the conditions of Mr. Sanguinetti's bail restricted his post-arraignment liberty and freedom of movement—including the ability to travel out of Florida.  (Doc. 72 at ¶ 80).  This allegation (along with the allegations enumerated in the Court's discussion of Count Eight), accepted as true at the motion to dismiss stage, offers sufficient factual support to state a claim of malicious prosecution under § 1983.  *See Brienza*, 2022 WL 3841095, at *8.  Count Nine survives the motions to dismiss.

### F.  Counts Ten and Eleven:  Abuse of Process under § 1983 and Florida Law

Count Ten raises an abuse of process claim under Florida law against Sheriff Rambosk and the Deputy Defendants, in their individual capacities, and against the County and Sheriff Rambosk, in his official capacity.  (Doc. 72 at ¶¶ 198–206).  And Count Eleven raises an abuse of process claim under § 1983 against Sheriff Rambosk and the Deputy Defendants, in their individual capacities.  (*Id.* at ¶¶ 207–13).

Under Florida Law, abuse of process "involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not

---

[10] Mr. Buro and Mr. Marino move for dismissal only on shotgun pleading grounds, (Doc. 82 at 13–14), which the Court has already rejected.

designed." *Scozari v. Barone*, 546 So. 2d 750, 751 (Fla. 3d DCA 1989).  The three

elements of an abuse of process claim are:

> (1) the defendant made an illegal, improper, or perverted
> use of process; (2) the defendant had an ulterior motive or
> purpose in exercising the illegal, improper or perverted
> process; and (3) the plaintiff was injured as a result of
> defendant's action.

*EMI Sun Vill., Inc. v. Catledge*, 779 F. App'x 627, 634–35 (11th Cir. 2019) (citing

*Hardick v. Homol*, 795 So. 2d 1107, 1111 n.2 (Fla. 5th DCA 2001)).  "[T]he tort of

abuse of process is concerned with the improper use of process *after it issues . . .* for

some wrongful and unlawful object or collateral purpose."  *Verdon v. Song*, 251 So.

3d 256, 258 (Fla. 5th DCA 2018) (citations and quotation marks omitted) (emphasis

added).  For example, whereas malicious prosecution deals with prosecuting a

person without reasonable grounds to believe him to be guilty, abuse of process

involves prosecuting an innocent person to, for example, extort payment of a debt.

*See Cline v. Flagler Sales Corp.*, 207 So. 2d 709, 711 (Fla. 3d DCA 1968) (citation

omitted).

Similarly, under federal law, the "gravamen of [abuse of process] is not the

wrongfulness of the prosecution, but some *extortionate* perversion of lawfully

initiated process to illegitimate ends."  *Harvey v. United States*, 681 F. App'x 850,

853 (11th Cir. 2017) (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994))

(alterations in original) (emphasis added).

Because Mr. Sanguinetti failed to allege that Defendants took any action

after process issued to misuse Mr. Sanguinetti's criminal case, he failed to state a

claim for abuse of process. *See id.*; *see also Whitney Info. Network, Inc. v. Gagnon*, 353 F. Supp. 2d 1208, 1212 (M.D. Fla. 2005) ("Under Florida law, abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed."). Counts Ten and Eleven are therefore dismissed with prejudice.

### G. Count Twelve: Deprivation of Rights and Denial of Equal Protection under § 1981 and § 1983

Count Twelve raises an equal protection claim under § 1981 and § 1983 against Sheriff Rambosk, the Deputy Defendants, Mr. Buro, Mr. Marino, Mr. Tallides, and the Cavo Lounge in their individual capacities, and against the County and Sheriff Rambosk in his official capacity. (Doc. 72 at ¶¶ 214–24). Defendants argue that Count Twelve should be dismissed because there are insufficient factual allegations to support the claim. (Doc. 81 at 23–24; Doc. 82 at 15).

"In order to state an equal protection claim, the plaintiff must prove that he was discriminated against by establishing that other similarly-situated individuals outside of his protected class were treated more favorably." *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1180 (11th Cir. 2009).

The SAC alleges Mr. Buro and Mr. Marino: (1) denied Mr. Sanguinetti entry into the Cavo Lounge because of his national origin or ethnicity (Doc. 72 at ¶¶ 29, 31); (2) made several derogatory comments about Mr. Sanguinetti's national origin, ethnicity, accent, mannerisms, and way of dress (*id.* at ¶ 30); and (3) allowed white

and "non-foreign appearing individuals" into the Cavo Lounge, regardless of their attire (*id.* at ¶ 33).

The SAC alleges the Deputy Defendants: (1) observed Mr. Sanguinetti "act, speak and dress in a manner [that] they perceived to be Hispanic or Latino from a foreign nation or country" and "brutally battered [Mr. Sanguinetti] because of their impermissible biases against individuals who appear to be of Hispanic or Latino national origin or ethnicity" (*id.* at ¶ 44); and (2) "unlawfully punched, kicked and otherwise struck or applied excessive force against [Mr. Sanguinetti], arrested him without probable cause and caused the commencement of [the criminal case] against him, due solely to his racial, ethnic or national origin based on discriminatory prejudices" (*id.* at ¶ 100).

The SAC alleges that the Deputy Defendants, Mr. Buro, and Mr. Marino: (1) assumed their version of events would be credited over Mr. Sanguinetti's because of his ethnicity or national origin (*id.* at ¶ 101); (2) used derogatory insults toward Mr. Sanguinetti and his family, used excessive force against him, arrested him despite the clear absence of probable cause, and submitted false sworn incident and arrest reports, all to further their "obviously discriminatory inclinations and motivations" (*id.* at ¶¶ 102–05); and (3) did not strike, grab, seize or arrest any non-Latino or non-Hispanic individuals acting similarly to Mr. Sanguinetti (*id.* at ¶ 107).

Between Mr. Sanguinetti's allegations about the prejudices the CCSO Defendants, Mr. Buro, and Mr. Marino harbored, and the allegations that—on this

basis—they treated Mr. Sanguinetti differently than similarly situated individuals, Count Twelve survives for all Defendants.

### H. Counts Thirteen and Fourteen: *Monell Liability* against the County

Counts Thirteen and Fourteen raise claims of *Monell* liability against the County.  (Doc. 72 at ¶¶ 225–44).  "[A] plaintiff bringing a *Monell* claim must show (1) the violation of a constitutional right, (2) that a municipality had a custom or policy of deliberate indifference to that right and (3) that the custom or policy caused the violation."  *Rogers v. Sheriff of Santa Rosa Cnty., Fla.*, No. 21-13994, 2023 WL 2566087, at *6 (11th Cir. Mar. 20, 2023) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).  And for purposes of *Monell* liability, a plaintiff must show a constitutional violation by establishing, as to an individual, "(1) a substantial risk of serious harm; (2) the [individual's] deliberate indifference to that risk; and (3) causation."  *Id.* at *6 (alterations in original) (quoting *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995)).

In section I.B. above, the Court noted that it did not have the information necessary to either dismiss the County from this case or to affirmatively rule that the County is a proper defendant in this matter.  Moreover, the SAC alleges the following facts: (1) Mr. Sanguinetti's constitutional rights were violated (*see, e.g.*, Doc. 72 at ¶¶ 19, 40–43); (2) the County instituted and maintained a well-settled practice that exhibited a deliberate indifference to citizen's constitutional rights and developed a culture of excessive force amount its Sheriff's Deputies (*id.* at ¶ 229) and the County knew or should have known that additional training or supervision

was needed to avoid the use of excessive force from recurring in the future (*id.* at ¶ 242); and (3) Plaintiff was deprived of his constitutional rights and sustained damages as a result of those policies (*id.* at ¶¶ 237, 244).  At the motion to dismiss stage, accepting these allegations as true, Counts Thirteen and Fourteen are adequately pleaded and survive the motions to dismiss.  That said, should the Court later determine that the County is not a proper party here, Counts Thirteen and Fourteen will be dismissed.

### I.  Counts Fifteen and Sixteen:  Supervisory Liability for Failure to Correct and Failure to Train under § 1983

Counts Fifteen and Sixteen raise Failure to Correct and Failure to Train claims under § 1983 against Sheriff Rambosk (Doc. 72 at ¶¶ 245–60), who argues the factual allegations supporting these counts are deficient for two reasons.  He argues, first, that the SAC fails to identify what the Sheriff's training policy is or how it is improper.  (Doc. 81 at 28).  Second, Sheriff Rambosk argues the SAC fails to show he knew about any deficiencies, much less that he was deliberately indifferent to them.  (*Id.* at 29).

A supervisor may be liable under § 1983 either when he participated in the alleged constitutional violation or when his actions are causally connected to the alleged constitutional violation.  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003).  Causal connections can be established in several ways.  First, "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so."  *Id.* at 1234–35 (quoting *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991)).  Second, "when the supervisor's

improper 'custom or policy . . . resulted in deliberate indifference to constitutional rights.'" *Id.* (quoting *Rivas*, 940 F.2d at 1495). And third, when facts "support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1235 (citing *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1561 (11th Cir.1993)).

As to CCSO policies, the SAC alleges Sheriff Rambosk: (1) maintained a policy of tolerating and normalizing excessive force (Doc. 72 at ¶ 66); (2) "has tacitly authorized a policy or custom of falsely arresting and applying excessive force against individuals, without probable cause or reasonable suspicion to do so or predicated solely on their race, color, ethnicity or national origin" (*id.* at ¶¶ 98, 102–03); (3) approved the Deputy Defendants' concurrent employment with the Cavo Lounge (*id.* at ¶ 108); (4) failed to correct the Deputy Defendants' known constitutionally violative behaviors, and assigned them to crowd control when they were unfit to interact with members of the public (*id.*); and (5) instituted a practice that exhibited a deliberate indifference to citizens' constitutional rights and developed a culture of excessive force among its deputies, illustrated by (a) the militarization of deputies, (b) emphasis on aggressive and violent behavior during citizen encounters, (c) unnecessary deployment of tasers, and (d) initiating criminal prosecutions to justify otherwise unlawful actions (*id.* at ¶ 229).

And regarding notice, the SAC alleges: (1) through prior lawsuits, psychological exams, civilian complaints, internal performance reviews, internal

whistleblowers, or his own observations, Sheriff Rambosk was aware of the Deputy Defendants' propensities to make arrests without probable cause and to use excessive force (including deploying tasers), but he failed to act to correct this behavior, and this failure constitutes his tacit approval of, or deliberate indifference to, this misconduct (*id.* at ¶¶ 230, 232–35, 241–43); and (2) Sheriff Rambosk knew or should have known that the Deputy Defendants needed additional training or supervision in using force, including the use of tasers, but he made the deliberate choice not to provide that added training or supervision (*id.* at ¶¶ 240, 242–43). These allegations, accepted as true at the motion to dismiss stage, offer sufficient factual support to state a claim for supervisory liability against Sheriff Rambosk in his individual capacity.  Counts Fifteen and Sixteen survive the motions to dismiss.

### J.  Counts Seventeen and Eighteen: *Monell* Liability against the Cavo Lounge

Counts Seventeen and Eighteen raise claims of *Monell* liability against the Cavo Lounge.  (Doc. 72 at ¶¶ 261–77).

In section I.C., above, the Court concluded the SAC's allegations, accepted as true at the motion to dismiss stage, offer sufficient factual support the state claims against Mr. Tallides and the Cavo Lounge.  This conclusion applies to Counts Seventeen and Eighteen, and thus, these counts survive as well.

### K. Count Nineteen:  Failure to Intervene under § 1983

Count Nineteen raises a claim for failure to intervene under § 1983 against Sheriff Rambosk and the Deputy Defendants.  (Doc. 72 at ¶¶ 278–81).  The only argument for dismissing Count Nineteen is that, like its predecessor in the initial

complaint, it fails to state factual allegations that Sheriff Rambosk had any involvement in the treatment of Mr. Sanguinetti before his arrest.  (Doc. 81 at 31–32).  The Court dismissed this count as to Sheriff Rambosk on that basis (Doc. 67 at 10), and he asks the Court to do the same here (Doc. 81 at 31–32).

Mr. Sanguinetti responds that "[p]ersonal involvement may be viably alleged regardless of . . . physical presence," and that "the Sheriff had the power, authority, and opportunity to cause [Mr. Sanguinetti] to be subjected to excessive force despite his lack of physical presence."  (Doc. 87 at 30).  But there are two problems with Mr. Sanguinetti's position.  First, the SAC lacks any factual allegations that would support holding Sheriff Rambosk liable in his individual capacity under a traditional failure-to-intervene theory.  And second, Mr. Sanguinetti offers no legal support for holding Sheriff Rambosk liable in his individual capacity under the theory as presented.

The Court rejects Mr. Sanguinetti's argument.  Count Nineteen is therefore dismissed with prejudice as to Sheriff Rambosk.

### L. Count Twenty:  Negligent Hiring and Retention under Florida Law

Count Twenty raises a negligent hiring and retention claim against the Cavo Lounge.  (Doc. 72 at ¶¶ 282–92).  The Cavo Lounge argues that "other than the general, vague, conclusory, and unsupported allegations" about the Deputy Defendants' history with the CCSO, the SAC does not allege that the Cavo Lounge would have been put on notice that it needed to investigate the Deputy Defendants further.  (Doc. 82 at 20).

A plaintiff states a claim for negligent hiring or retention by alleging that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Murphy v. Carnival Corp.*, 426 F. Supp. 3d 1311, 1314 (S.D. Fla. 2019) (citation omitted).  A plaintiff satisfies the second of these elements by "showing that the employer was put on notice of the harmful propensities of the agent/employee/contractor."  *Id.* (citation omitted).

The SAC alleges: (1) under a "special detail" contract, the Cavo Lounge paid the Deputy Defendants and the CCSO specially to assign the Deputy Defendants to provide security to the Cavo Lounge (Doc. 72 at ¶¶ 15, 21–22); (2) the Deputy Defendants were agents, servants, and employees of both the CCSO and the Cavo Lounge, which was responsible for ensuring its personnel obeyed all applicable laws (*id.* at ¶¶ 16, 18–19, 88, 263); (3) the CCSO, Sheriff Rambosk, and certain of the Deputy Defendants have been "the repeated focus of news making stories on the abuse of police discretion, false statements, excessive force, and failure to discipline officers" (*id.* at ¶ 67); (4) the Cavo Lounge knew of the Deputy Defendants' "propensities to arrest individuals without probable cause and to apply excessive force during arrests," and it was aware or should have been aware of incidents like Mr. Sanguinetti's arrest and prosecution that resulted in media attention and lawsuits (*id.* at ¶¶ 267–68, 289); (5) based on these previous incidents, "[a]n appropriate investigation would have revealed the unsuitability of the [Deputy

Defendants] for employment assignments requiring interaction with the public or crowd control" (*id.* at ¶ 284); (6) in light of what the Cavo Lounge knew or should have known, it was unreasonable for the Cavo Lounge to hire the Deputy Defendants to handle crowd control or interact with the public (*id.* at ¶ 287); and (7) without investigating, the Cavo Lounge placed the Deputy Defendants into a position where they could foreseeably inflict harm, and it failed to take reasonable measures in hiring and retaining the Deputy Defendants that would have prevented Mr. Sanguinetti's injuries and his damages (*id.* at ¶¶ 288, 290–91).

The SAC alleges that the Deputy Defendants were unfit to handle crowd control or interact with the public, that the Cavo Lounge knew or reasonably should have known of their unfitness, and that the Deputy Defendants' unfitness caused Mr. Sanguinetti's injuries. Accepting these allegations as true at the motion to dismiss stage, the Court finds them sufficient to state a claim for negligent hiring and retention against the Cavo Lounge. Accordingly, Count Twenty also survives the motions to dismiss.

### M. Count Twenty-One:  Negligent Training and Supervision under Florida Law

Count Twenty-One raises a negligent training and supervision claim against the County, Sheriff Rambosk, and the Cavo Lounge. (Doc. 72 at ¶¶ 293–302).

Under Florida law, negligent supervision and retention occurs when, during the employment, "the employer knows or should know of an employee's unfitness and fails to take further action such as 'investigating, discharge or reassignment.'" *Malicki v. Doe,* 814 So. 2d 347, 362 n.15 (Fla. 2002) (quoting *Garcia v. Duffy,* 492 So.

2d 435, 438–39 (Fla. 2d DCA 1986)).  A plaintiff states a claim for negligent supervision by alleging "(1) the existence of a relationship giving rise to a legal duty to supervise; (2) the negligent breach of that duty; and (3) that the negligence was the proximate cause of plaintiff's injury." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009) (citing *Collins v. Sch. Bd. of Broward Cnty.*, 471 So. 2d 560, 563 (Fla. 4th DCA 1985)).  And to establish the second prong, a plaintiff must allege that "(1) the employer received actual or constructive notice of an employee's unfitness, and (2) the employer did not investigate or take corrective action such as discharge or reassignment." *See Doe v. Carnival Corp.*, 470 F. Supp. 3d 1317, 1324 (S.D. Fla. 2020) (citations and internal quotation marks omitted).

"Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." *Clary v. Armor Corr. Health Servs., Inc.*, No. 6:13-cv-90-Orl-31KRS, 2014 WL 505126, at *4 (M.D. Fla. Feb. 7, 2014) (citing *Lewis v. City of St. Petersburg*, 260 F.3d 1260, 1265 (11th Cir. 2001)).  "Negligent training occurs when an employer was negligent in the implementation or operation of the training program and this negligence caused a plaintiff's injury." *Doe v. NCL (Bahamas) Ltd.*, No. 1:16-cv-23733-UU, 2016 WL 6330587, at *4 (S.D. Fla. Oct. 27, 2016) (citations and internal quotation marks omitted).  To state a claim for negligent training, a plaintiff must allege that the nature of the employment put the plaintiff in a "zone of risk" such that the employer had a duty running to the plaintiff.  *Clary*, 2014 WL 505126, at *4–5.

Count Twenty-One alleges both negligent training and supervision. (Doc. 72 at 47–48). The two torts are similar, but they are distinct causes of action. *Thomas v. City of Palm Coast*, No. 3:14-cv-172-J-32PDB, 2015 WL 7429051, at *4 (M.D. Fla. Nov. 23, 2015) (citing *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1387 (S.D. Fla. 2014)). Federal Rule of Civil Procedure 10(b) establishes "a flexible standard that turns on whether pleading multiple claims in one count advances or hinders the interests of clarity." *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1139 (M.D. Fla. 2018) (citing Fed. R. Civ. P. 10(b)). Notice is the guiding principle of the Eleventh Circuit's shotgun pleading analysis, and the key inquiry is whether the "failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." *Weiland*, 792 F.3d at 1324.

It is unclear whether the parties recognize the distinction between the two claims. (Doc. 81 at 32–34; Doc. 82 at 18–20). It may well be because of the way they are alleged in a single count. The Court dismisses Count Twenty-One without prejudice to re-filing separate claims for each tort and the bases for those claims. *Accord Thomas*, 2015 WL 7429051, at *4.

That said, this is not an invitation for Mr. Sanguinetti to do anything more than separate the negligent supervision and retention and negligent training claims into two counts, citing to the factual support for such in the SAC in a Third Amended Complaint. Defendants, of course, will be allowed to move to dismiss those two claims anew. The Court is mindful that this will further protract this

litigation but believes, in the interests of justice, that this is an even-handed approach and the best way to proceed at this time.

## CONCLUSION

Accordingly, it is now **ORDERED:**

(1)    Collier County's Motion to Dismiss (Doc. 79) is **DENIED without prejudice** to being renewed at the summary judgment stage.

(2)    The Motion to Dismiss by Sheriff Rambosk, David Crisp Jr., Adam Dillman, David Drucks, Michael Puka, and John Scaduto (Doc. 81) is **GRANTED in part** and **DENIED in part**.

(3)    The Motion to Dismiss by SLR Naples Corp., Sergio Tallides, Joseph Marino, and Jason Buro (Doc. 82) is **GRANTED IN PART and DENIED IN PART**.

(4)    Counts One, Ten, and Eleven are **DISMISSED WITH PREJUDICE**.

(5)    Count Eight is **DISMISSED WITH PREJUDICE** as to the County and Sheriff Rambosk in his official capacity.

(6)    Count Nineteen is **DISMISSED WITH PREJUDICE** as to Sheriff Rambosk.

(7)    Count Twenty-One is **DISMISSED WITHOUT PREJUDICE**.

(8)    Should Mr. Sanguinetti wish to file a third amended complaint to correct the deficiencies noted in Count Twenty-One, he is directed to do so by September 26, 2023.  Otherwise, the Court will dismiss Count Twenty-One with prejudice without further notice.

**ORDERED** in Fort Myers, Florida on September 5, 2023.[11]

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[11] The Court **strongly recommends** that the parties consider settlement negotiations before the preparation of motions for summary judgment, which will invariably increase litigation costs.  The Court is not requiring such at this time but hopes that the parties consider doing so.  Should the parties choose to do so, the Court would invite a joint motion to stay existing deadlines such that the parties may engage in good faith settlement negotiations.